**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TRANSPORTATION : 
INSURANCE COMPANY, : 
                     : 
     Plaintiff, : 
                     :    CIVIL ACTION NO.
v. :    1:11-CV-01383-RWS
                     : 
SELECTIVE WAY INSURANCE : 
COMPANY, : 
                     : 
     Defendant. : 

## ORDER

     This case comes before the Court on Defendant's Motion for Summary Judgment [35], Plaintiff's Motion for Partial Summary Judgment [37], and Plaintiff's Motion to Strike the Examination Under Oath of Larry Lewallen [42]. After reviewing the record, the Court enters the following Order.

### Background

     Plaintiff Transportation Insurance Company ("Transportation" or "Plaintiff") initiated this litigation by filing a Complaint in the Superior Court of Gwinnett County, Georgia, seeking contribution from Defendant Selective Way Insurance Company ("Selective" or "Defendant") for the cost of defending

and indemnifying an insured in an underlying state court action. (See generally Compl., Dkt. [1-1] at 3-9 of 79.) In the two-count Complaint, Transportation seeks to recover contribution from Selective for amounts paid by Transportation to defend and settle the underlying state court action (Count I) and attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11 (Count II). Selective timely removed the case to this Court on the basis of diversity of citizenship jurisdiction. (Notice of Removal, Dkt. [1] at 2.) Both parties now move for summary judgment on the issue of Selective's liability for contribution. (See generally Def.'s Mot. for Summ. J., Dkt. [35]; Pl.'s Mot. for Summ. J., Dkt. [37].) Selective also moves for summary judgment on the issue of its liability for attorney's fees and expenses. (See generally Def.'s Mot. for Summ J., Dkt. [35].) The facts are as follows and, except where otherwise indicated, are undisputed.

## I.    The Underlying Litigation

Lewallen Construction ("Lewallen") was hired to build the Silver Comet Trail, a biking and walking path that spans from Marietta, Georgia to the Alabama border. (Def.'s Statement of Material Facts in Supp. Mot. for Summ. J. ("Def.'s SMF"), Dkt. [35-21] ¶ 1.) Part of the trail runs through a 600-acre

property owned by Duane West ("Mr. West"). (Id. ¶ 2.) During the entirety of the construction of the trail on Mr. West's property, and until October 1, 2004, Lewallen was the named insured on a commercial general liability policy issued by Transportation (the "Transportation Policy"). (Id. at 5.)

A.    The "First Complaint"

On September 18, 2002, Mr. West filed a complaint against Lewallen in the Superior Court of Polk County, Georgia, raising claims arising out of Lewallen's construction of the trail on Mr. West's property (the "first complaint" or "first lawsuit"). (Id. ¶ 7.) Mr. West alleged that "[o]n or about May 22, 2002, [Lewallen] . . . cut [Mr. West's] fences, entered the Subject Property, graded such property, and poured concrete upon such property." (Id. ¶ 8; Def.'s Mot. for Summ. J., Ex. E, Dkt. [35-6] at 13 of 28 (first complaint ¶ 21).) Mr. West asserted claims against Lewallen for trespass, negligence per se, and intentional infliction of emotional distress. (Def.'s SMF, Dkt. [35-21] ¶ 8; Def.'s Mot. for Summ. J., Ex. E, Dkt. [35-6] at 15, 19, & 23 of 28 (first complaint Counts II, IV, & VI).) Transportation received a copy of the first complaint and hired defense counsel to represent Lewallen. (Def.'s SMF, Dkt. [35-21] ¶ 9.) Defense counsel began defending the case, filing an answer on

3

behalf of Lewallen, consulting with an engineer, and drafting and delivering status reports to Transportation representatives.  (Id.)  Defense counsel sent copies of some or all of the reports and correspondence to Lewallen's owners. (Id. ¶ 10.)

On February 23, 2004, Mr. West was deposed.  (Id. ¶ 11.)  In his deposition, he described the damages to his property that allegedly were caused by Lewallen's work on the trail.  (Id. ¶ 12.)  He stated that as a result of Lewallen's construction work, he had incurred and was incurring the following effects: surface water runoff onto his property; ponding of water and flooding on his property; sediment and silt deposits on his property; erosion of the land on his property; and the removal of a fence from his property when the construction began.  (Id. ¶ 12.)  Mr. West claimed that these damages were caused by the following actions taken by Lewallen during construction of the trail: addition of fill dirt to the old railroad bed; filling in of ditches; failure to add or retain culverts in areas where necessary; the addition of inadequate culverts; and the failure to timely install silt fences during construction.  (Id. ¶ 13.)

In an April 2004 report, defense counsel updated Transportation about the status of the case and gave an in-depth summary of Mr. West's deposition testimony. (Id. ¶ 14.) The owner of Lewallen was copied on this report. (Def.'s Mot. for Summ. J., Ex. A, Dkt. [35-1] (report from defense counsel to Transportation).) In the report, defense counsel explained, "[Mr. West] alleges that Lewallen violated county and state drainage regulations in part by not [placing] culverts in certain areas, and that the trail bed now acts as a dam, ponding and flooding two different areas of the property." (Id. ¶ 16.) The report identified the specific areas of the property where Mr. West claimed ponding and flooding were occurring and outlined specific shortcomings on the part of Lewallen (i.e., lack of or inadequate culverts) that allegedly caused the ponding and flooding. (Id. ¶ 17.) Defense counsel also informed the recipients of the report that "[Mr. West] also testified that dirt which Lewallen placed on the property (to build up the trail) was deposited as silt outside the right of way, in violation of state and county regulations because silt fencing was not placed along the full length of the trail." (Id. ¶ 18.) Additionally, defense counsel informed the recipients of the report that an engineer, who had inspected Mr. West's property, advised the following:

> [W]e cannot dispute that water may be seeping under the trail and, as a general proposition, the trail has increased surface water runoff. He also tells us that drainage could be improved by the addition of some culverts and the clearing of some overgrown ditches. [The engineer] also is unable to dispute that an undetermined amount of sediment was deposited on Plaintiff's property, and that there were some violations of Georgia's Soil and Sediment Control Act during the construction, albeit technical ones.

(Id. ¶ 19.) At the close of the report, defense counsel stated, "Lewallen is willing to undertake reasonable repairs to the drainage system at his own expense as part of a settlement." (Id. ¶ 20.)

On October 1, 2004, Transportation's coverage of Lewallen ceased and Selective issued Lewallen a commercial general liability policy, which provided coverage until October 1, 2009. (Id. ¶ 26.) When Selective took over as Lewallen's insurer, Transportation did not notify Selective about the suit or request that Selective participate in the defense. (Id. ¶ 27.) Transportation continued to defend Lewallen on its own and continued to seek settlement of the case on its own. (Id. ¶ 28.)

B.    The "Second Complaint"

On July 10, 2006, the first lawsuit was dismissed without prejudice due to Mr. West's failure to appear at a calendar call on July 7, 2006. (Id. ¶ 31.)

6

Mr. West reinitiated the suit on November 21, 2006, however, by filing a

second complaint (the "second complaint" or "second lawsuit") pursuant to

Georgia's renewal statute, O.C.G.A. § 9-2-61. (Id.; Def.'s Mot. for Summ. J.,

Ex. J, Dkt. [35-13] (second complaint).) At Transportation's request, the same

defense counsel continued to defend Lewallen. (Def.'s SMF, Dkt. [35-21] ¶

32.)

The claims and causes of action asserted in the second complaint were

virtually identical to the claims and causes of action asserted in the first

complaint. (Id. ¶ 33.) In the second complaint, like the first complaint, Mr.

West alleged that "[o]n or about May 22, 2002, [Lewallen] . . . cut Plaintiff's

fences, entered the Subject Property, graded such property, and poured concrete

upon such property." (Def.'s Mot. for Summ. J., Ex. J, Dkt. [35-13] at 13 of 30

(second complaint ¶ 27).) Mr. West again raised claims against Lewallen for

trespass, negligence per se, and intentional infliction of emotional distress. (Id.

at 17, 21, & 25 of 30 (second complaint Counts III, V, & VII).)

In February or March 2007, Transportation notified Selective, for the first

time, of the lawsuit against Lewallen. (Id. ¶ 35.) Deborah Bryant, a Selective

representative, issued a reservation of rights letter, informing Lewallen that

AO 72A
(Rev.8/82)

"[t]here is a question as to whether or not there is coverage under the policy for the allegations in the complaint," and that Selective will undertake any investigation and/or defense, which may appear necessary under a complete Reservation of Rights." (Id. ¶ 38.) At the close of the letter, Ms. Bryant informed Lewallen that she would notify him regarding Selective's coverage opinion once Selective completed its investigation. (Id. ¶ 40.) Ms. Bryant subsequently was copied on defense counsel's status reports to Transportation. (Id. ¶¶ 41-42, 44.)

A compromise and settlement eventually was reached in the action against Lewallen. (Pl.'s Statement of Additional Material Facts Which Present a Genuine Issue For Trial ("Pl.'s SAMF"), Dkt. [46-1] ¶ 33.) Selective did not contribute towards the settlement. (Id.) Transportation paid $87,500.00 toward the settlement on behalf of Lewallen and incurred $107,677.23 in attorney's fees and expenses in defending against the suit. (Id. ¶¶ 34-35.)

Subsequent to the compromise and settlement reached in the underlying action, Transportation filed this suit against Selective, seeking contribution for the costs of defending and indemnifying Lewallen in the underlying action and attorney's fees. Selective contends, however, that under the provisions of the

Selective Policy, in particular, the "known loss" exclusion, it was not obligated to defend or indemnify Lewallen and therefore is not liable for contribution or attorney's fees. (<u>See generally</u> Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br."), Dkt. [35-19].)

## II.     The Selective Policy

The relevant provisions of the Selective Policy are as follows:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply. . . .

    **b.**     This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured . . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If [the insured] . . . knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.[1]

**d.** "[P]roperty damage" will be deemed to have been known to have occurred at the earliest time when any insured . . .

**(1)** Reports all, or any part, of the . . . "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the . . . "property damage"; or

**(3)** Becomes aware by any other means that . . . "property damage" has occurred or has begun to occur.

(Id. ¶¶ 65, 69.)

---

[1] This provision is referred to by the parties and the Court as the "known loss" exclusion.

**Discussion**

**I.**     **Plaintiff's Motion to Strike the Examination Under Oath of Larry Lewallen [42]**

Transportation moves to strike the Examination Under Oath of Larry Lewallen ("Lewallen EUO" or "EUO") pursuant to Federal Rule of Civil Procedure ("Rule") 37(c), arguing that Selective failed to comply with its discovery obligations by failing to produce the Examination before the discovery period expired. (See generally Pl.'s Br. in Supp. of Mot. to Strike Lewallen EUO ("Pl.'s Br."), Dkt. [42-1].) Rule 37(c) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(a) governs a party's initial disclosure obligations and requires that a party disclose "the name . . . or each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . ." and "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the

11

disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ."[2]  Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).  The Court sets out the factual background of Transportation's Motion to Strike before considering the motion on the merits.

> A.    Factual Background

Selective relies on the Lewallen EUO in support of its argument that the "known loss" exclusion of the Selective Policy precludes coverage of Lewallen because Lewallen knew of the damages giving rise to the West action prior to the Selective Policy period.  (See Def.'s SMF, Dkt. [35-12] ¶¶ 15, 23-25 (relying on Lewallen EUO to show that Lewallen was aware of Mr. West's claims in the underlying action prior to the Selective Policy period).)  Discovery relevant to the Lewallen EUO occurred as follows.  Selective's Initial Disclosures included the following statements:

> 3.    Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in a responsive pleading.

---

[2] Rule 26(e) requires a party to supplement any disclosure made pursuant to Rule 26(a) upon learning that the disclosure is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(1).

AO 72A
(Rev.8/82)

> **. . . Defendant has multiple grounds for denying coverage to Lewallen. . . . Defendant contends that the facts of the underlying loss are within the "known loss" exclusion found in the policy because Lewallen was aware of the damage that ultimately formed the basis for the underlying action prior to Defendant's policy period.**

4.　Provide the name . . . of each individual likely to have discoverable information that you may use to support your claims or defenses . . . .

> **. . . All . . . parties and their representatives in [the second lawsuit]**.

(Def.'s Rule 26 Initial Disclosures, Dkt. [15] at 2.)  Selective's responses to Transportation's First Interrogatories were as follows:

2.　State the name . . . of each person who, to your knowledge, information or belief or to the knowledge, information or belief of anyone acting on your behalf, has knowledge of any of the events or happenings leading to the occurrence(s) which is the subject of this litigation.

> **. . . [A]ll . . . parties and their representatives in [the first and second lawsuits].**

3.　Of those persons identified in answer to the preceding Interrogatory, please identify whom, you or anyone acting for or on your behalf have contacted in any way.  Please also identify from whom you or anyone acting on your behalf have taken a written, oral, or recorded statement from. Please identify the type of statement given (oral, written, transcribed, etc.), the person taking said statements, the date said statement was given, and the person having possession,

custody, or control of the original or a copy of said statement.

> **. . . Defendant took a recorded Examination Under Oath of Mr. Larry Lewallen on April 26, 2010 and has possession of same . . . .**

(Def.'s Resps. to Pl.'s First Interrogs., Dkt. [49-4] at 4-5 of 14.)  Finally,

Selective's responses to Transportation's Requests for Production of

Documents included the following:

2.    All written and/or transcribed statements pertaining to this incident.

> **Defendant objects to Request 2 on grounds that it would require it to respond by disclosing information protected by the attorney client privilege, as work product, and/or as prepared in anticipation of litigation or for trial. Subject to and without waiving the foregoing objections, see attached transcript of February 23, 2004 deposition of Duane West.**

3.    Any and all documents identified in your response to Transportation's First Interrogatories to Selective.

> **Defendant objects to Request 3 on grounds that it would require it to respond by disclosing information protected by the attorney client privilege, as work product, and/or as prepared in anticipation of litigation or for trial. Subject to and without waiving the foregoing objections, all discoverable documents in Defendant's possession have been produced.**

AO 72A
(Rev.8/82)

(Def.'s Resps. to Pl.'s First Request for Production of Docs., Dkt. [49-5] at 4 of 8.)

In accordance with the foregoing objections to Transportation's First Request for Production of Documents, Selective did not produce a copy of the Lewallen EUO to Transportation. In support of its Motion for Summary Judgment, however, Selective relies on the EUO, among other evidence, in support of its argument that coverage was precluded under the Selective Policy's "known loss" exclusion, given Lewallen's knowledge, prior to the Selective Policy period, of the damages giving rise to Mr. West's claims. (See generally Def.'s Resp. to Pl.'s Mot. to Strike ("Def.'s Resp."), Dkt. [49], [49-1]; Def.'s Br. in Supp. of Mot. for Summ. J., Dkt. [35-19].)

B.    Analysis

In its motion, Transportation argues that Selective violated Rule 26 by failing to produce the Examination during discovery and thus that the Examination should be stricken:

> Selective identified the Examination in its responses to Transportation's First Interrogatories, but failed and refused to produce the examination during the discovery period on grounds that it was work product and information prepared in anticipation of litigation or for trial and also protected by the attorney-client

15

privilege.  Selective clearly took the position that the Examination
was not discoverable in light of its statement that it had produced
"all discoverable documents in Defendant's possession" . . . .
Accordingly, Selective cannot shield the Examination during
discovery and then use it as a weapon in support of its Motion for
Summary Judgment.

(Pl.'s Br., Dkt. [42-1] at 7-8.)  Selective argues, on the contrary, that it fulfilled

its obligations under Rule 26, notwithstanding the fact that it did not provide

Transportation with a copy of the Examination.  (Def.'s Resp., Dkt. [49], [49-1]

at 11-16.)  To this end, Selective argues:

Selective made clear to Transportation that it considered Lewallen
Construction and its representatives (which includes Mr. Lewallen,
its owner) to be potential witnesses in the case.  Additionally, and
most importantly, Selective explicitly informed Transportation that
it had taken a recorded EUO of Mr. Lewallen on April 26, 2010
and that it had a copy of the transcript in its possession.  Selective
clearly stated its grounds for declining to produce a copy of the
Lewallen EUO, and Transportation never took issue with
Selective's stance and never sought to obtain a copy (either on its
own or with Court action).

(Def.'s Resp., Dkt. [49-1] at 15-16.)  Selective further argues that even if it

violated Rule 26 by failing to produce a copy of the Lewallen Examination, the

Examination should not be stricken under Rule 37(c) because the failure to

produce was substantially justified or harmless.  (Id. at 16-21.)

16

The Court agrees with Selective that the Lewallen Examination is not due to be stricken under Rule 37(c). Assuming, without deciding, that Selective's failure to produce a copy of the Examination constituted a violation of Rule 26, the Court finds the violation harmless. As Selective points out (Def.'s Resp., Dkt. [49-1] at 19), it explained in its Initial Disclosures that one of its defenses would be that Lewallen knew, prior to the Selective Policy period, of the property damages giving rise to the underlying action, thus triggering the "known loss" exclusion of the Selective Policy. Selective further disclosed to Transportation that it had taken a sworn statement from Mr. Lewallen. Accordingly, Transportation was put on notice that the knowledge of Lewallen and its owner, Mr. Lewallen, would be central to one of Selective's defenses. Given Transportation's knowledge of Selective's "known loss" defense, the Court cannot find that Transportation was harmed by Selective's failure to produce a copy of the Examination, which only corroborates that defense.

Additionally, Selective is correct that the Examination does not contain information that Transportation could not have obtained on its own. As stated immediately above, Transportation knew of Selective's intention of raising a "known loss" defense and knew that Selective had taken a sworn statement

from Mr. Lewallen.  Transportation could have obtained its own sworn statement from Mr. Lewallen or taken his deposition to obtain information relevant to this defense.

Finally, the Court agrees with Selective that the EUO does not contain new information but, rather, is cumulative of other evidence in the record.  That is, the Lewallen EUO merely corroborates other record evidence, which demonstrates Lewallen's awareness of the damages giving rise to Mr. West's claims prior to the Selective Policy period.  For example, even without considering the EUO, the evidence shows that Mr. Lewallen was copied on defense counsel's April 2004 status report to Transportation (months before the inception of the Selective Policy in October 2004), which report summarized Mr. West's deposition testimony and the substance of his claims against Lewallen.  (Def.'s Mot. for Summ. J., Ex. A, Dkt. [35-1].)  Furthermore, in the same status report, defense counsel informed Transportation of Lewallen's willingness to "undertake reasonable repairs at his own expense as part of a settlement." (Id. at 11 of 12.)  This evidence–in particular, that of Lewallen's willingness to settle Mr. West's claims–amply demonstrates that Lewallen knew of the damages giving rise to the West action prior to the inception of the

18

Selective Policy period.  Introduction of the Lewallen EUO, which only

corroborates this evidence, thus is not harmful to Transportation.

In sum, pretermitting the issue of Selective's compliance with Rule 26,

the Court finds that the Lewallen EUO is not due to be stricken under Rule

37(c).  Plaintiff's Motion to Strike accordingly is **DENIED**.[3]

## II.     The Parties' Motions for Summary Judgment [35] & [37]

As stated in the Background section above, both parties move for

summary judgment on Transportation's Count I claim for contribution.

Selective additionally moves for summary judgment on Transportation's Count

II claim for statutory attorney's fees.  The Court sets out the legal standard

governing a motion for summary judgment before considering the parties'

motions on the merits.

### A.     Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

---

[3] This ruling ultimately is of no moment.  As is apparent from the following discussion of the parties' respective motions for summary judgment, the Court need not–and therefore does not–rely on the Lewallen EUO in determining whether the property damages alleged in the underlying litigation fall within the Selective Policy's "known loss" exclusion.

19

fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). "The moving party bears 'the initial responsibility of informing the . . .

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(internal quotations omitted)). Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

    The applicable substantive law identifies which facts are material. Id. at

248. A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law. Id. An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

    In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist.  Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."  Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

21

B.    Analysis

1.    *Selective's Liability for Contribution (Count I)*

The Court agrees with Selective that under the plain language of the Selective Policy, in particular, the "known loss" exclusion, Selective had no duty to defend or indemnify Lewallen in connection with the underlying West litigation. Based on the allegations of the second complaint, filed on November 21, 2006 (during the Selective Policy period), it is clear that the property damage giving rise to the suit was known to Lewallen prior to the Selective Policy period and thus was not covered under the Selective Policy.

As a threshold matter, under Georgia law, "contracts of insurance are interpreted by ordinary rules of contract construction." Boardman Petrol., Inc. v. Federated Mut. Ins., 498 S.E.2d 492, 494 (Ga. 1998) (citation omitted). "Terms in an insurance policy are given their ordinary and common meaning, unless otherwise defined in the contract." Id. (citation omitted). At issue in this case are Selective's duties to defend and indemnify under the terms of the Selective Policy. Because under Georgia law, "an insurer's duty to pay and its duty to defend are separate and independent obligations," Penn-Am. Ins. Co. v.

22

<u>Disabled Am. Veterans, Inc.</u>, 490 S.E.2d 374, 376 (Ga. 1997), the Court will

consider these duties separately, taking first Selective's duty to defend.

### i.     Duty to Defend

The Court finds that Selective had no duty to defend Lewallen against the

underlying suit because the property damage alleged in the second complaint

fell within the "known loss" exclusion of the Selective Policy.  Under Georgia

law,

> [a]n insurer's duty to defend turns on the language of the insurance
> contract and the allegations of the complaint asserted against the
> insured.  We look to the allegations of the complaint to determine
> whether a claim covered by the policy is asserted.  If the facts as
> alleged in the complaint even arguably bring the occurrence within
> the policy's coverage, the insurer has a duty to defend the action.
> However, . . . where the complaint filed against the insured does
> not assert any claims upon which there would be insurance
> coverage, the insurer is justified in refusing to defend the insured's
> lawsuit.

<u>Nationwide Mut. Fire Ins. Co. v. Somers</u>, 591 S.E.2d 430, 433 (Ga. App. 2003)

(citations omitted).

As stated in the Background section, <u>supra</u>, under the terms of the

Selective Policy, Selective had a "duty to defend [Lewallen] against any 'suit'

seeking [damages for property damage]," so long as the Policy applied to the

23

property damage at issue.  (Def.'s Mot. for Summ. J., Ex. L Part 1, Dkt. [35-15] at 3 of 10 (Selective Policy subsection 1.a).)  Under the Policy's "known loss" exclusion, however, the Policy did not apply to property damage if, "[p]rior to the policy period," "[Lewallen] knew that the . . . 'property damage' had occurred, in whole or in part."[4]  (Id. (Selective Policy subsection 1.b(3)).) Moreover, under the plain terms of the exclusion,

> If [Lewallen] . . . knew, prior to the policy period, that the . . . 'property damage' occurred, then any continuation, change or resumption of such . . . 'property damage' during or after the policy will be deemed to have been known prior to the policy period.

(Id.)

It is apparent from the face of the second complaint that Lewallen knew of the alleged property damage prior to the Selective Policy period.  The second complaint explicitly alleges that it was filed as a "renewal" of an original complaint (i.e., the first complaint), the latter of which was filed on September 18, 2002 and dismissed without prejudice on July 7, 2006, due to Mr. West's

---

[4] Nor did the Policy apply to property damage that did not occur "during the policy period[.]" (Def.'s Mot. for Summ. J., Ex. L Part 1, Dkt. [35-20] at 3 of 10 (Selective Policy subsection 1.b(2)).)

failure to appear at a calendar call.  The opening paragraphs of the second

complaint read as follows:

> COMES NOW, Duane West, Plaintiff in the above styled action, *who files this Complaint for Damages, pursuant to the renewal provisions of the O.C.G.A. § 9-2-61* and respectfully shows this Court the following:
>
> 1.
>
> Plaintiff filed his *original action* . . . against the above named Defendants [including Lewallen] on September 18, 2002.
>
> 2.
>
> On July 10, 2006, this Court entered an ORDER dismissing Plaintiff's case without prejudice for Plaintiff's counsel's failure to appear at a peremptory calendar call on July 7, 2006.
>
> 3.
>
> Plaintiff has never utilized the provisions of the above referenced code section in *renewing his complaint*.
>
> 4.
>
> Plaintiff has paid all court costs in the original action, and hereby *renews his Complaint for damages against the above-styled Defendants [including Lewallen]* within the time period allowed by law.

(Def.'s Mot. for Summ. J., Ex. J, Dkt. [35-13] at 3, 5 of 30 (second complaint

¶¶ 1-4 (emphasis added)).)  Because it is apparent from the face of the second

25

complaint that the second lawsuit was merely a renewal of the first lawsuit,

filed before the Selective Policy period, it is apparent from the face of the

second complaint that Lewallen had notice of Mr. West's claims against it, and

the property damage underlying those claims, prior to the Policy period.

Moreover, the substantive allegations of the second complaint

demonstrate that Lewallen knew of the property damage underlying Mr. West's

claims prior to the Selective Policy period. In the second complaint, Mr. West

raised claims against Lewallen for trespass and negligence per se.[5] (Def.'s Mot.

for Summ. J., Ex. J, Dkt. [35-13] at 17 & 21 of 30 (second complaint Counts III

& V).) In support of these claims, Mr. West alleged that "*[o]n or about May

22, 2002*, [Lewallen] . . . cut Plaintiff's fences, entered the Subject Property,

graded such property, and poured concrete upon such property." (Id. at 13 of

---

[5] As stated in the Background section, supra, Mr. West also raised a claim for
intentional infliction of emotional distress. The Court finds that the Selective Policy
did not cover this claim. While the Policy provided coverage not only for "property
damage" but also for "bodily injury," this coverage does not apply to claims for
intentional infliction of emotional distress, as Selective correctly argues. See
Presidential Hotel v. Canal Ins. Co., 373 S.E.2d 671, 672 (Ga. App. 1988) ("Used in
an insurance policy, the term 'bodily injury' means just that—'bodily injury.' It
pertains to physical injury to the body. It does not include non-physical, emotional or
mental harm. And it cannot be equated with the broader term 'personal injury.'"
(citations omitted)). Transportation does not dispute Selective's argument in this
regard.

30 (second complaint ¶ 27 (emphasis added)).)  With respect to his claim for trespass, Mr. West further alleged, "[Mr. West] warned all Defendants [including Lewallen] *before their entry on the property* that the entry would be trespass and directed Defendants not to enter on the property."  (Id. at 17 of 30 (second complaint ¶ 39 (emphasis added)).)

Based on the foregoing allegations, Lewallen knew of Mr. West's trespass claim on or before May 22, 2002—well before the start of the Selective policy period.  Furthermore, Mr. West's claim for negligence per se was predicated on Lewallen's alleged violation of Georgia's law of trespass.  (Id. at 23 of 30 (second complaint ¶¶ 52-55).)  Accordingly, because Lewallen knew of Mr. West's trespass claim prior to the Selective Policy period, he likewise had knowledge of the property damage giving rise to the negligence per se claim, prior to the Selective Policy period.

Transportation seeks to avoid the foregoing by arguing that the second complaint alleged damages commencing on May 22, 2002 but continuing into the Selective Policy period, and thus not covered by the "known loss" exclusion: "[T]he Second Complaint does not allege when Lewallen completed its work.  Instead, the Second Complaint alleges that Lewallen remained on the

27

property as of November 21, 2006 [the date the second complaint was filed]

causing damage by its negligent acts while the Selective Policy was in effect."

(Pl.'s Opp'n Br., Dkt. [46] at 13 (citations to record omitted).)  The second

complaint indeed alleged that Lewallen was "remain[ing] upon [Mr. West's]

property" at the time the second complaint was filed.  (Def.'s Mot. for Summ.

J., Ex. J, Dkt. [35-13] at 19 of 30 (second complaint ¶ 41).)  However, as

Selective correctly argues, "any trespass occurring after Selective's policy

period began was a 'continuation' of the alleged ongoing property damage that

began on May 22, 2002, and thus was subject to the know-loss exclusion."

(Def.'s Reply in Supp. of Mot. for Summ. J. ("Def.'s Reply"), Dkt. [50] at 4.)

(See Def.'s Mot. for Summ. J., Ex. L Part 1, Dkt. [35-15] at 3 of 10 (Selective

Policy subsection 1.b(3) ("known loss exclusion")) ("If [the insured] . . . knew,

prior to the policy period, that the . . . 'property damage' occurred, then any

continuation, change or resumption of such . . . 'property damage' during or

after the policy period will be deemed to have been known prior to the policy

period.").)[6]

---

[6] Transportation relies on E&L Chipping Co., Inc. v. Hanover Ins. Co., 962 S.W.2d 272 (Tex. App. 1998) in support of its argument that the "known loss" defense cannot apply given the allegation in the second complaint that the property damage

In sum, based on the allegations of the second complaint and the plain language of the Selective Policy, Selective had no duty to defend Lewallen against the claims raised in the underlying litigation, as the claims were based on property damage that fell within the Policy's "known loss" exclusion.

### ii. Duty to Indemnify

For the same reasons stated above in connection with the duty to defend, the Court finds that Selective had no duty to indemnify Lewallen for losses

---

continued through the time the second complaint was filed. (Pl.'s Opp'n Br., Dkt. [46] at 11-12.) In E&L Chipping, the plaintiff-insured alleged property damage that began prior to the insurance policy period but that continued into the insurance policy period and was continuing as of the date the complaint was filed. 962 S.W.2d at 275. The insurance company defended on several grounds, including on the basis of the "known loss" *doctrine*—arguing that "the underlying claims were 'known losses' or 'losses in progress' prior to the inception of [the insurance] policy and [were] not covered by the policy." Id. at 276. The court rejected this defense based on the plain language of the insurance policy at issue, which provided coverage for any property damage that occurred during the policy period: "According to the policy, property damage must occur during the policy period; on the face of the pleadings, at least some of the property damage did so. In looking at the 'eight corners' of the insurance policy and the underlying pleadings, it is apparent the facts pleaded are within the scope of the policy period." Id. at 275.

The Court in this case has undertaken the same analysis as the Court in E&L Chipping, but reaches a different conclusion in light of the particular provisions of the Selective Policy. Unlike the insurance policy at issue in E&L Chipping, which covered any property damage occurring during the policy period and did not speak to known losses, the Selective Policy contains an express "known loss" exclusion. Because the property damages alleged in this case fall within that exclusion, Selective had no duty to defend.

sustained in the underlying litigation. As stated above, the property damage at issue in the West litigation was not covered by the Selective Policy but, rather, fell within the "known loss" exclusion. Accordingly, because the Policy did not provide coverage for the damages claimed in the West litigation, Selective was under no duty to indemnify Lewallen for losses sustained therein.[7]  See Elan v.

---

[7] Transportation seeks to avoid this result by arguing that "the 'known loss' exclusion does not apply since a new loss occurred subsequent to Lewallen's attempt to correct water runoff issues." (Pl.'s Opp'n Br., Dkt. [46] at 14-15.)  In support of this argument, Transportation relies on Lone Star Steakhouse & Saloon v. Liberty Mut. Ins. Co., 343 F. Supp. 2d 989, 1008-09 (D. Kan. 2004) for the proposition that a "known loss" defense does not apply in cases where the insured has taken remedial steps to correct known property damage, which steps ultimately were unsuccessful, leading to "new" or continuing property damage. (Pl.'s Opp'n Br., Dkt. [46] at 14-15; Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Dkt. [37-2] at 13-15.)  Transportation's argument is unpersuasive.

The facts of Lone Star are inapposite to the facts of this case for several reasons, including that the insurance policy at issue in Lone Star did not contain an express "known loss" *exclusion*, as does the Selective Policy at issue in this case.  On the contrary, the policy at issue provided that coverage would extend to property damage caused by an "accident" or "occurrence" but would not extend to property damage that was "expected or intended from the standpoint of the insured." Lone Star, 343 F. Supp. 2d at 996.  While the defendant-insurance company raised a "known loss" defense, the defense was not based on an express exclusion under the policy, but rather on the "known loss" or "loss in progress" *doctrine* under Kansas law.  Id. at 993, 1009-10.

The "known loss" issue in this case, by contrast, is one of contract interpretation, and the language of the "known loss" exclusion in the Selective Policy is unambiguous: where an insured knows of property damage prior to the Policy period, any "continuation, change or resumption" of that damage will be "deemed to have been known prior to the policy period." (Def.'s Mot. for Summ. J., Ex. L Part 1,

Pharm. Research Corp. v. Employers Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998) ("[U]nder Georgia law, . . . an insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract . . . ."). Moreover, "an insurer's duty to defend is broader than its duty to indemnify." Shafe v. Am. States Ins. Co., 653 S.E.2d 870, 873 (Ga. App. 2007). Accordingly, in light of the Court's finding that Selective had no duty to defend Lewallen, Selective had no duty to indemnify it for losses it sustained in connection with the underlying litigation.

In accordance with the foregoing, Selective's Motion for Summary Judgment [35] on the issue of its liability for contribution is due to be **GRANTED**. Transportation's Motion for Partial Summary Judgment [37] is due to be **DENIED**.

   2.   *Selective's Liability for Attorney's Fees and Litigation Expenses (Count II)*

---

Dkt. [35-15] at 3 of 10 (Selective Policy subsection 1.b(3).) Transportation contends that the exclusion does not apply because "attempts [by Lewallen] to correct the water runoff were ultimately unsuccessful resulting in runoff during the effective dates of the Selective Policy." (Pl.'s Br. in Opp'n, Dkt. [46] at 15.) However, by Transportation's own characterization of events, any water runoff that occurred after Lewallen undertook remedial efforts (assuming he did so) and during the Selective Policy period was a "continuation" of the original water runoff, thus falling within the "known loss" exclusion.

31

In Count II of the Complaint, Transportation seeks attorney's fees and litigation expenses, pursuant to O.C.G.A. § 13-6-11, alleging that Selective "has acted in bad faith, has been stubbornly litigious, and has caused Transportation unnecessary trouble and expense in refusing to contribute any amounts towards the defense and indemnity of its insured, Lewallen, during Selective's coverage period." (Compl., Dkt. [1-1] ¶ 22.) "A prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim." United Cos. Lending Corp. v. Peacock, 475 S.E.2d 601, 602 (Ga. 1996). In light of the Court's finding that Transportation's claim for contribution fails as a matter of law, there is no basis upon which to award Transportation attorney's fees and litigation expenses.[8] Selective's Motion for Summary Judgment [35] on the issue of its liability for attorney's fees and litigation expenses therefore is due to be **GRANTED**.

## Conclusion

In accordance with the foregoing, Defendant Selective Way Insurance Company's Motion for Summary Judgment [35] is **GRANTED**. Plaintiff

---

[8] The Court further notes that there is no evidence in the record of bad faith or any other course of conduct by Selective that could warrant the imposition of attorney's fees and expenses under O.C.G.A. § 13-6-11.

Transportation Insurance Company's Motion for Partial Summary Judgment

[37] is **DENIED**.  Finally, Plaintiff Transportation Insurance Company's

Motion to Strike the Examination Under Oath of Larry Lewallen [42] is

**DENIED**.  The Clerk shall enter judgment in favor of Defendant, and close the

case.

        **SO ORDERED**, this  _13th_  day of November, 2012.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)